1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RALPH P. PHILLIPS,

11            Plaintiff,                        CIV S-06-0747 GGH

12        vs.

13   MICHAEL J. ASTRUE,[1]                      ORDER
     Commissioner of Social Security,
14
              Defendant.
15   _____/

16            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits

18   ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social

19   Security Act ("Act").

20            Cases in which a plaintiff claims a mental disability are always difficult.  They are

21   especially difficult when a 37 year old person is claiming that he is permanently disabled from

22   working, i.e., ostensibly for the rest of his life.  It is clear that everyone diagnosed with bipolar

23   disorder is not relegated to unemployment for the rest of their lives.  Treatment records are of a

24
          [1] On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
25   Security, replacing Jo Anne B. Barnhart, the original defendant herein. Pursuant to 42 U.S.C. §
     405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
26   action.

                                                    1

snapshot variety, especially consultative examinations.  Issues concerning the efficacy of

medicine prescribed to eradicate the problems associated with the disease are always murky.  In

this case, the record shows that one of plaintiff's stated  "goals" related to medical personnel was

his receipt of SSI.  Thus, the questions could be validly raised whether plaintiff simply is

claiming disability as a means to collect governmental benefits, or whether he believed his

disease severe enough that he better acquire SSI benefits or he will have nothing.

In this case, the undersigned finds plaintiff to be afflicted with bipolar disorder.

Under the standards governing review of disability cases, however, the undersigned cannot find

that the ALJ erred in relying on the evidence indicating lack of complete disability.  Other

evidence points to disability, but such evidence does not mean that the ALJ did not base the non-

disability decision on substantial evidence and appropriate standards.

For the reasons that follow, plaintiff's Motion for Summary Judgment is denied,

and the Commissioner's Cross Motion for Summary Judgment is granted.

BACKGROUND

Plaintiff, born May 12, 1970, applied for disability benefits on June 11, 2003.  (Tr.

at 45.)  Plaintiff alleged he was unable to work since May 17, 2002, due to bipolar disorder,

numbness in the hands and feet, a bad back, and left ear deafness. (Tr. at 13, 51.)  In a decision

dated September 12, 2005, administrative law judge ("ALJ") Antonio Acevedo-Torres

determined that plaintiff was not disabled.[2]  The ALJ made the following findings:

---

[2]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to
disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful
activity?  If so, the claimant is found not disabled.  If not, proceed

2

1.      The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.      The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.      The claimant's low back strain, obesity, congenital left ear hearing loss, bipolar disorder and possible personality disorder are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4.      These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.      The . . . claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.      The claimant has the following residual functional capacity: unskilled light work (lifting 20 pounds occasionally and 10 pounds frequently) with no more than occasional climbing, stooping, kneeling, crouching, or crawling.  He can hear normal conversational speech, but is unable to perform tasks requiring very fine hearing.

\\\\\

---

to step two.

Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3

7.      The claimant's past relevant work as a cook helper (dishwasher), maintenance worker, cashier, deckhand, groundskeeper, and truck washer did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8.      The claimant's medically determinable impairments do not prevent the claimant from performing his past relevant work.  In the alternative, the claimant is not disabled because a significant number of jobs exist that he can perform (Rule 202.21, Table No. 2 of Appendix 2, Subpart P, Regulations No. 4 and Social Security Rulings 83-10, 83-14, 85-15).

9.      The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. at 21-22.)

ISSUES PRESENTED

Plaintiff has raised the following issues: (A) Whether the ALJ Failed to Properly Evaluate the Medical Record as a Whole and Credit the Opinion of Dr. Zoglio, Plaintiff's Treating Physician, and that of Consultative Psychiatrist, Dr. Shoreh Ghaemian; (B) Whether the ALJ Failed to Properly Credit Plaintiff's Testimony Regarding the Nature and Extent of His Limitations; and, (C) Whether the ALJ Erred in Stopping the Sequential Evaluation at Step Four Finding That Plaintiff Could Perform His Past Relevant Work, or in the Alternative Finding Him Not Disabled Based on the Grids Without the Assistance of a Vocational Expert.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

4

1420 (1971), quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229, 59 S. Ct. 206 (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  <u>Thomas v. Barnhart</u>, 278  F.3d 947, 954 (9th Cir. 2002).

<u>ANALYSIS</u>

A. <u>Whether the ALJ Erred by Discrediting Treating and Consultative Opinions</u>

Plaintiff contends that the ALJ erred by rejecting the opinions of treating physician, Dr. Michael Zoglio, M.D., and consultative psychiatrist, Dr. Shoreh Ghaemian, M.D.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical professional only for *"clear and convincing"* reasons.  <u>Lester</u> , 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may be rejected for *"specific and legitimate"* reasons.  <u>Lester</u>, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to weigh the contradicted treating physician opinion, <u>Edlund v. Massanari</u>, 253 F.3d 1152 (9th Cir. 2001),[3] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999)

---

[3]  The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

1  (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes,

2  881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

3  insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

4          In this case, the ALJ found Dr. Zoglio's opinion regarding plaintiff's limitations

5  to be "inconsistent with the objective evidence of record." (Tr. at 20.)  In particular, the ALJ

6  rejected Dr. Zoglio's opinion that plaintiff had a learning disability and severe limitations in his

7  ability to perform even simple tasks in a full-time work setting, and moderately severe limitations

8  in his ability to relate to other people.  (Tr. at 17, 18, 259.)  The ALJ found that the record,

9  including Dr. Zoglio's own objective findings and treatment records, did not support these

10  opinions. (Tr. at 17, 18, 19.)

11          In rejecting Dr. Zoglio's opinion, the ALJ noted that none of the treating records

12  indicated a learning disability, and that testing by examining psychologist Dr. Janice Y.

13  Nakagawa, showed plaintiff to have average to low average cognitive functioning.  (Tr. at 17,

14  234-35.)  The ALJ also noted that plaintiff had completed high school, had only one year of

15  special education, and that treating sources generally showed plaintiff's cognitive functioning to

16  be fully intact.  (Tr. at 17, 208, 233, 278, 262).  For example, treatment records from the

17  Sacramento County Mental Health Center dated June 2, 2004, reveal that plaintiff's thought form

18  and content were evaluated as "within normal limits," and that his short and long term memory

19  were "adequate," as were his concentration, judgment and abstract thinking.  (Tr. at 208.)

20          Based on this substantial evidence, the ALJ's finding that plaintiff did not have a

21  medically determinable learning disability was not in error.  He articulated specific and

22  legitimate reasons for rejecting Dr. Zoglio's contradicted opinion on that point.  The ALJ's

23  rejection of Dr. Zoglio's opinion regarding plaintiff's limitations was likewise not in error.

24          Dr. Zoglio completed a questionnaire regarding plaintiff's residual functional

25  capacity on December 17, 2004, in which he opined that plaintiff's "learning disabilities along

26  with bipolar illness make him unable to work." (Tr. at 256-59.)  He further opined that plaintiff

6

1    had "moderately severe" limitations in his ability to relate to other people, to concentrate and

2    follow instructions, and to perform work where contact with others is minimal.  (Tr. at 258-59.)

3    He assessed "severe" limitations in plaintiff's ability to perform work requiring frequent contact

4    with others, and to perform simple or complex tasks in a full-time setting.  (Tr. at 259.)

5              Although plaintiff argues that Dr. Zoglio's opinion was supported by plaintiff's

6    consistently low GAF scores and his treatment with heavy psychotropic prescriptions like

7    Seroquel and Lithium, these facts alone do not warrant a finding that the ALJ erred.  (See, e.g.,

8    Tr. at 161, 268, 269).  Throughout a one-year period, plaintiff was assessed with GAF[4] scores

9    ranging from 45 to 70.[5]  According to the Diagnostic and Statistical Manual of Mental Disorders,

10   a GAF of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals,

11   frequent shoplifting) or any serious impairment in social, occupational, or school functioning

12   (e.g., no friends, unable to keep a job)."  See Diagnostic and Statistical Manual of Mental

13   Disorders 34 (4th ed. 2000) ("DSM IV").  A GAF rating of 51-60 indicates moderate symptoms

14   such as flat affect or occasional panic attacks or difficulty in social, work or school relationships,

15   such as few friends or conflicts with peers or co-workers, and a GAF rating of 61-70 indicates

16   some "mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social,

17   occupational, or school functioning (e.g., occasional truancy, or theft within the household), but

18   generally functioning pretty well, has some meaningful interpersonal relationships."  Id.

19             Given these disparate findings, the ALJ was entitled to resolve the conflicting

20   evidence, and to adopt Dr. Nakagawa's opinion regarding plaintiff's limitations.  Dr. Nakagawa

21

22        [4] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM IV").

23

24        [5] On September 28, 2003, examining psychiatrist, Dr. Shoreh Ghaemian, M.D., assessed plaintiff a GAF score of 50. (Tr. at 179, 183.)  On October 8, 2003, Dr. Christopher Eggleston, M.D., of the Sacramento County Mental Health Center, assessed him a GAF score of 54.  (Tr. 221).  On June 25, 3004, Dr. Zoglio assessed plaintiff a GAF score of 45 (Tr. at 201, 259, 260.), and on September 7, 2004, examining psychologist, Dr. Janice Nakagawa assessed him a score of 70.  (Tr. at 236.).

25

26

1  administered several tests during her examination of plaintiff, and opined that he could complete

2  simple job instructions, could deal with work routines and changes in routine work settings, and

3  could likely deal with co-workers and supervisors.  (Tr. at 232-35).

4  By contrast, the record does not show that Dr. Zoglio performed any testing on

5  plaintiff.  In fact, Dr. Zoglio reported that he had seen plaintiff only twice, for forty minutes each

6  time.  (Tr. at 256).  Further, his assessment was conclusory in nature, opining that plaintiff's

7  learning disability and bipolar illness "make him unable to work."  (Id.); Meanel, 172 F.3d at

8  1113; see also Magallanes, 881 F.2d at 751.  Given the brief nature of the treatment relationship

9  and Dr. Zoglio's conclusory opinion regarding plaintiff's purported inability to work, the ALJ did

10  not err in rejecting it in favor of Dr. Nakagawa's opinion, which was supported by independent,

11  clinical psychological testing.

12  Plaintiff further asserts that the ALJ erred in rejecting the opinion of examining

13  consultant, Dr. Shoreh Ghaemian, M.D.  The ALJ rejected Dr. Ghaemian's opinion because he

14  "had no treatment records at the time of his examination and because he performed no

15  psychological testing."  (Tr. at 19.)  Although the record shows that Dr. Ghaemian had some

16  records at the time of the examination, it is not clear whether they included treatment records.[6]

17  (Tr. at 179.)  The ALJ further remarked that the doctor's own observations were essentially

18  normal except for some mild mood disturbance.  (Tr. at 19.)

19  Indeed, upon examination, Dr. Ghaemian opined that plaintiff was capable of

20  managing baseline simple financial transactions, but that more complete financial management

21  was "relatively limited."  (Tr. at 183.)  Dr. Ghaemian noted that plaintiff was cooperative, that

22  his thought process was tight and logical, and that his speech was at a normal rate and pace with

23  relevant content.  He also found that plaintiff's fund of knowledge and information was average,

24  _____

25  [6] Dr. Ghaemian's report indicates that he had received a copy of claimant's file
application from the Department of Social Services, and a copy of a letter from Guest House
26  Mental Health and Community Homeless Services.  (Tr. at 179.)

1   that he was able to spell a word forward and backward with no mistakes, and was able to perform

2   a three-step command without difficulty.  He further noted that plaintiff's abstract thinking was

3   average and appropriate and that his insight and judgment were good.  (Tr. at 181-82).

4          The ALJ therefore rejected Dr. Ghaemian's conclusory opinion that plaintiff was

5   "not capable of gainful employment at any standard level." (Tr. at 183.)  The ALJ further found

6   that Dr. Ghaemian relied too heavily on plaintiff's subjective allegations, which the ALJ found to

7   be less than credible. (Tr. at 19.)  The ALJ was entitled to give more weight to the opinion of Dr.

8   Nakagawa than that of Dr. Ghaemian, which was somewhat internally inconsistent insofar as he

9   found plaintiff unable to perform any work despite his observations that plaintiff's affect and

10  cognition were essentially normal.  These were specific and legitimate reasons for rejecting Dr.

11  Ghaemian's opinion, and the ALJ was therefore not in error.

12         B.  The ALJ Did Not Err in Discrediting Plaintiff's Testimony

13         Plaintiff alleges that the ALJ erred in finding plaintiff's subjective complaints

14  regarding his mental impairments to be "not fully credible." (Tr. at 20.)

15         The ALJ determines whether a disability applicant is credible, and the court defers

16  to the ALJ who used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater,

17  94 F.3d 520, 522 (9th Cir. 1995).  In evaluating whether subjective complaints are credible, the

18  ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v.

19  Sullivan, 947 F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective

20  complaints incredible solely because objective medical evidence does not quantify them.  Id., at

21  345-46.  If the record contains objective medical evidence of an impairment possibly expected to

22  cause pain, the ALJ then considers the nature of the alleged symptoms, including aggravating

23  factors, medication, treatment, and functional restrictions.  See id., at 345-47.  The ALJ also may

24  consider the applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2)

25  unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

26  of treatment; and (3) daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see

9

1  generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records,

2  physician and third party testimony about nature, severity, and effect of symptoms, and

3  inconsistencies between testimony and conduct, may also be relevant.  Light v. Social Security

4  Administration, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own

5  observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

6  substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177, n.6 (9th Cir. 1990).

7  Absent affirmative evidence demonstrating malingering, the reasons for rejecting applicant

8  testimony must be clear and convincing.  Morgan v. Commissioner of Social Sec. Admin., 169

9  F.3d 595, 599 (9th Cir. 1999).

10         Here, the ALJ found plaintiff's subjective complaints to be not fully credible for

11  the several reasons, including the fact that plaintiff's claims of frequent changes between

12  depression and manic state, several times during the day, "are not typical of bipolar disorder and

13  have not been observed by any source."  (Tr. at 20.)   The ALJ also noted that plaintiff had

14  repeatedly stated that his medications were effective in controlling his symptoms although he had

15  not frequently been compliant, and that even after a period of non-compliance, the mental status

16  examination findings had been relatively normal.  (Tr. at 20.)  Finally, the ALJ discredited

17  plaintiff because "as discussed above, the claimant's functioning denotes no more than mild to

18  moderate limitations in functioning."  (Id.)

19         The ALJ's finding that the frequent changes between depression and manic state,

20  several times during the day are "not typical of bipolar disorder" is unsupported by any citation to

21  medical authority.  Dr. Zoglio and Dr. Nakagawa diagnosed plaintiff with bipolar disorder,

22  mixed, with rapid cycling.  (Tr. at 235, 256.)  Although the DSM-IV provides that "cycling"

23  usually occurs much less infrequently than on a daily basis, the ALJ's opinion as to what is

24  "typical" of bipolar disorder is an inappropriate basis for finding plaintiff less than credible.  See

25  DSM IV, at 427-28 (providing that "episodes are demarcated either by partial or full remission

26  for at least 2 months or a switch to an episode of opposite polarity") (emphasis added).

1     While this is an improper basis for discrediting plaintiff, the ALJ properly relied

2     on record evidence showing plaintiff's medications were effective when taken, as well as

3     evidence showing plaintiff's daily activities indicated a higher functional ability than reported.

4     Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990) (An error which has no effect on the

5     ultimate decision is harmless.).

6          For example, plaintiff reported to Dr. Nakagawa that medication for his manic and

7     depressive episodes "helps a lot," and although he still has depressive episodes, they are not as

8     frequent and are "mild compared to what it used to be." (Tr. at 232.)  Shortly before the hearing,

9     plaintiff's treatment records from Sacramento County Mental Health Services show plaintiff's

10    mood was within normal range, that the form and content of his thoughts were within normal

11    limits, and that his memory was fair to adequate. (Tr. at 262.)  Further, the ALJ noted that

12    plaintiff was consistently able to do chores, such as putting dishes in the dishwasher, cooking

13    simple meals, walking his girlfriend's children to school, helping his girlfriend grocery shop,

14    reading books, watching television, and taking public transportation.  (Tr. at 17, 91-96, 281-82.)

15    These reasons were legally sufficient for discrediting plaintiff's subjective complaints regarding

16    his mental impairments.

17          C.  The ALJ Did Not Err in Finding Plaintiff Could Perform His Past Relevant Work

18          Plaintiff next argues that the ALJ erred in finding plaintiff had the residual

19    functional capacity to perform his past relevant work in light of plaintiff's significant, non-

20    exertional limitations.  Additionally, plaintiff argues that the ALJ's finding "in the alternative"

21    that plaintiff was not disabled based on the GRIDS, was also in error.

22          At step four, the plaintiff has the burden of showing that he is no longer able to

23    perform his past relevant work.  Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing

24    Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001)).  The ALJ's determination at this step

25    must be based on an examination of plaintiff's "residual functional capacity and the physical and

26    mental demands" of the past relevant work.  Id.  (quoting 20 C.F.R. §§ 404.1520(e) and

11

416.920(e)).  "A claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy."  Id.  "The Social Security Regulations provide that the ALJ may draw on two sources of information to define the claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational report."  Id.

Here, the ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform simple tasks on a regular and sustained basis, but was limited to unskilled light work, lifting 20 pounds occasionally and 10 pounds frequently, with no more than occasional climbing, stooping, kneeling, crouching or crawling.  He also found plaintiff unable to perform tasks requiring very fine hearing.  (Tr. at 19.)

In assessing plaintiff's RFC, the ALJ considered the opinion Dr. Nakagawa as well as the RFC assessment of a non-examining, agency professional.  (Tr. at 19, 235, 248.)  The form completed by the agency professional on September 14, 2004, was based upon a review of the record.  In it, she opined that plaintiff had moderate limitations in maintaining social functioning and in maintaining concentration, persistence or pace.  (Tr. at 248.)  She further opined that plaintiff was only moderately limited in his ability to work in coordination with or in proximity to others without being distracted by them.  (Tr. at 252.)  These findings that plaintiff was not significantly impaired in these areas are largely consistent with Dr. Nakagawa's assessment that plaintiff could complete simple job instructions, could deal with co-workers and supervisors, and despite possible difficulty dealing with the public, could "manage adequately." (Tr. at 235.)

The ALJ took these opinions into account, together with his finding that plaintiff was only partially credible regarding the severity of his limitations, and concluded that plaintiff had only mild restrictions in his activities of daily living, mild difficulties in maintaining social functioning, but moderate limitations in concentration, persistence, and pace when performing complex or detailed tasks.  (Tr. at 17).  The ALJ's finding that plaintiff could perform unskilled

work adequately accounted for his mild to moderate non-exertional limitations.  He noted that

unskilled work "involves little or no judgment to do simple duties that can be learned on the job

in a short period of time," and that "such jobs ordinarily involve dealing primarily with objects,

rather than with data or people."  (Tr. at 19.); SSR 85-15.

The ALJ's assessment of plaintiff's RFC was properly supported and not in error.

Based on this RFC assessment, the ALJ concluded that plaintiff was able to perform his past

relevant work as a cook helper (dishwasher), maintenance worker, cashier, deckhand,

groundskeeper, and truck washer.  (Tr. at 22.)

The ALJ found plaintiff could do his past jobs as they were described in the

record.  (Tr. at 20, 62-69.).  In particular, he found that plaintiff's past jobs as a dishwasher,

maintenance worker, cashier, deckhand, groundskeeper and truck washer were very simple,

unskilled jobs that did not involve detailed or complex work tasks.  Further, they did not involve

lifting more than 20 pounds occasionally or 10 pounds frequently, and did not involve more than

occasionally climbing, stooping , crawling, crouching or kneeling.  Further, they did not require

fine hearing.  (Tr. at 20.)

These findings are consistent with the ALJ's assessment of plaintiff's RFC, which

as discussed above, was not in error.  Accordingly, plaintiff's argument that the ALJ erred by

ruling in the alternative that plaintiff was not disabled without calling a vocational expert is

without moment.  Because the ALJ found plaintiff capable of performing his past relevant work,

he did not need to proceed to the next step in the sequential evaluation.  Further, although the

ALJ may consider the testimony of a vocational expert to determine if plaintiff can do his past

relevant work, he is not required to call such an expert at the fourth step.  Matthews v. Shalala,

10 F.3d 678, 681 (9th Cir. 1993); see also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).

\\\\\

\\\\\

\\\\\

1  CONCLUSION

2          ACCORDINGLY, plaintiff's Motion for Summary Judgment is DENIED, the

3  Commissioner's Cross Motion for Summary Judgment IS GRANTED, and the Clerk is directed

4  to enter Judgment for the Commissioner.

5  DATED: 8/28/07                              /s/ Gregory G. Hollows
                                               U.S. Magistrate Judge
6

7
   GGH:mb
8  Phillips.747.ss.wpd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26